**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.D.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.J.L., MOTHER | : | |
| | : | No. 218 WDA 2026 |

Appeal from the Order Entered January 29, 2026
In the Court of Common Pleas of Greene County
Orphans' Court at No: 39 O.A. of 2025

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.J.A.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: K.J.L., MOTHER | : | |
| | : | No. 219 WDA 2026 |

Appeal from the Order Entered January 29, 2026
In the Court of Common Pleas of Greene County
Orphans' Court at No: 38 O.A. of 2025

BEFORE:  McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: August 11, 2026**

In these consolidated appeals, K.J.L. (Mother) appeals from the orders granting the petitions of Greene County Children and Youth Services (the Agency) and terminating her parental rights to J.D.L. and B.J.A.L. (collectively, Children).[1]  We affirm.

---

[1] Children's father, K.D.C., signed a consent to Children's adoption on January 21, 2026.

*BACKGROUND*

J.D.L. was born in February 2018 and B.J.A.L. was born in May 2020. The Agency placed the family on safety plans in August 2021, June 2023 and November 2023. ***See*** N.T., 1/27/26, at 135. On January 11, 2024, Children were adjudicated dependent based on "deplorable and unhealthy home conditions and a lack of parental capacity to ensure the children's health and well-being." ***Id.*** at 127.

Children were placed in foster care in January 2024 and returned to Mother's care in August 2024. However, Children were removed from Mother's care again in March 2025. The orphans' court provided a chronological summary of Mother's service plans:

> [O]n January 11, 2024, Mother was ordered to obtain/maintain safe and appropriate housing, complete a mental health evaluation and follow through with the recommendations, and complete the positive parenting program (PPP)[;] on June 6, 2024, Mother was ordered [to complete an] IDD [intellectual and developmental disabilities assessment] and to participate in [Children's medical] appointments[;] and on May 22, 2025, Mother was ordered to complete perpetrator counseling[2] as well as provide healthy snacks for [Children].
>
> Mother did not substantially [or] successfully complete offered services. … Mother would not show for appointments with no indication as to why[,] and would generally never reschedule, or transportation was deemed an issue. ... It is important to note that Mother … had endless opportunities to complete the services required.

---

[2] Mother was found to be a perpetrator of Children's "dental neglect." ***See*** N.T. at 127-28.

Orphans' Court Opinion (OCO), 2/26/26, at 3-4 (citations to notes of testimony omitted).

On March 18, 2025, Children were placed in the pre-adoptive home of T.F. and J.F. (Foster Parents), where Children "continue to be placed." *Id.* at 2. On October 7, 2025, the Agency filed a petition to terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5) and (b). The orphans' court held a hearing on January 27, 2026.[3] The Agency presented testimony from six witnesses: licensed psychologist, Dr. Eric Bernstein; licensed professional counselor, Janelle Crisp; Greene County housing administrator, Amy Switalski; Greene County disabilities specialist, Victoria Stewart; Justice Works visitation supervisor, Maryiah Demaske; and Agency caseworker, Ariel Miller. Mother did not testify or present any witnesses. Children's legal counsel and guardian *ad litem* both advocated for termination.

On January 29, 2026, the orphans' court entered the orders terminating Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5) and (b). Mother filed timely notices of appeal and concise statements of errors pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother presents the following question for review:

I.    WAS CLEAR AND CONVINCING EVIDENCE PRESENTED TO SHOW THAT TERMINATION WAS WARRANTED PURSUANT TO 23 PA.C.S. §2511(A)(1), (A)(2), (A)(5), and (B)?

Mother's Brief at 4.

---

[3] Separate counsel represented Children's legal and best interests.

*DISCUSSION*

In considering an order terminating parental rights, this Court's review is limited to whether the decision is supported by the evidence. ***In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021). We must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. ***Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). An appellate court may not disturb the ruling unless it has discerned an error of law or abuse of discretion. ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021). We may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** (citations omitted). This Court will not re-weigh evidence, and we may not reverse a decision "merely because the record could support a different result." ***In re Adoption of K.M.G.***, 219 A.3d 662, 670 (Pa. Super. 2019) (*en banc*).

Termination of parental rights is governed by Pennsylvania's Adoption Act. ***See*** 23 Pa.C.S. § 2511. An orphans' court must first consider the parent's conduct and the enumerated grounds for termination in Section 2511(a). If the court finds clear and convincing grounds for termination under Section 2511(a), it must then assess the children's needs and welfare under Section 2511(b), "giving primary consideration to the developmental, physical and emotional needs and welfare of the child." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). This Court "need only agree with [the] decision as to any one subsection of [Section 2511(a), in addition to Section 2511(b),] to affirm the

termination of parental rights." ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we consider the orphans' court's termination of Mother's parental rights under Section 2511(a)(2).

Section 2511(a)(2) provides for termination when:

The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2). A petitioner must prove a parent's "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In re A.H.***, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). These grounds "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." ***Id.***

Mother states that the "evidence relied upon by [the orphans' court] in determining [Mother's] incapacity to satisfy § 2511(a)(2) was her apparent lack of mental capacity to parent [C]hildren and her lack of participation in her [c]ourt ordered services." Mother's Brief at 15. Mother claims she "did participate in and completed most of her [c]ourt ordered services." ***Id.*** According to Mother, she "was never provided an opportunity to show and put in place the skills she learned from her services." ***Id.*** at 16. Mother argues:

> While [Mother] actively engaged in her services and visits, she was never given a chance to show that her parental incapacity could be remedied. Without any such evidence[,] such a finding by the [orphans' c]ourt is an abuse of discretion and the termination of [Mother's] parental rights based on 23 Pa.C.S. § 2511(a)(2) should be overturned.

*Id.* The evidence does not support Mother's argument.

As the orphans' court observed, the testimony "indicated Mother did not substantially [or] successfully complete offered services." OCO at 3. Ms. Miller, the Agency's caseworker, testified that Children were adjudicated dependent as a result of Mother's "lack of parental capacity," including Mother being "an indicated perpetrator of dental neglect." N.T. at 127-28. Despite regular review hearings and service plans, Mother failed to remedy her parental incapacity. For example,

> [Ms.] Demaske, the Justice Works [visitation supervisor], testified that Mother was offered sixteen (16) total visits [with Children] and she attended eleven (11), although one of the missed visits was due to [Ms. Demaske] cancelling the visit because of weather.
>
> ***
>
> Mother's housing has also been a concern. Mother never provided a rental or lease agreement to the Agency[. I]t seems that at minimum Mother's house has the electric bill in grandmother's name because of an outstanding $17,000.00 bill, and there were various instances of roach and/or bed bug infestations.

OCO at 4-5. In addition, Dr. Bernstein testified that Mother "historically has not been able to make significant strides or progress … to dramatically or substantially improve in her parental abilities and situation." *Id.* at 6 (citing N.T. at 41).

The orphans' court noted that "Mother has completed some services offered and her attorney indicated her love for [Children]." *Id.* at 8. Nonetheless, the court concluded Mother "has done very little to successfully follow through to be a parent … and this is due to her own choices." *Id.* The court explained:

> Although Mother knew the services ordered were for the return of [Children], she did not complete services in their entirety, and just because she is now potentially actively attempting to comply, there are many concerns of the [c]ourt. Specifically her no-shows, and her inability to understand the severity of not complying, the overall wellbeing of [Children], [Children's] developmental concerns that are finally being addressed and rectified - all which seemed to be a concern of most [of the witnesses] that testified at the hearing.
>
> Again, the testimony of the witnesses was credible, and there seems to be the same worry among all that are involved here [concerning] the risks to [Children] if returned to Mother. Further, she has shown little or no ability to serve as a parent when she is around [Children]. Testimony indicated that Mother relied on the Justice Works [visitation supervisor, Ms. Demaske,] for discipline and/or redirection, and that Mother would often try to talk to [Ms. Demaske] about her boyfriends or personal issues and not give her sole attention to [Children]; she was not attentive.
>
> It is concerning that Mother is not distressed by the regression of [Children] when [they were] returned to her for several months …. Additionally, it is concerning that Mother does not take her small amount of visitation time that she receives seriously, and instead, chooses to gossip with the supervisor at the visits.
>
> Here, the [c]ourt must conclude, by clear and convincing evidence, that Mother did very little to perform parental duties, showed no ability or fervent desire to cure the reasons for the removal, and has failed to perform parental duties.

*Id.* at 9-10 (citations to notes of testimony omitted).

The evidence supports the orphans' court's determination that Mother's incapacity to parent has caused Children to be without essential parental care, and the causes of the incapacity "cannot or will not be remedied." *In re A.H.*, 247 A.3d at 443. We discern no error or abuse of discretion in the court's termination of Mother's parental rights under Section 2511(a)(2).

Next, we consider Section 2511(b), which requires that the orphans' court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). Intangibles "such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The court must consider a parent-child bond and effect of permanently severing a bond. *Id.* However, the court "must also consider whether the child[ is] in a pre-adoptive home and whether [the child has] a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268.

In challenging termination under Section 2511(b), Mother emphasizes her bond with Children. Mother argues:

> Based on the evidence and testimony presented by Dr. Bernstein, a bond between [Mother] and [C]hildren existed and had a positive effect on [C]hildren. The testimony of the witnesses who observed interactions between [C]hildren and [Mother] were all clear and consistent. [C]hildren were always excited to see [Mother], the[y] called her mommy, they showed her love and affection, and those feelings were reciprocated by [Mother]. There is no denial that a strong and affectionate bond exists between [C]hildren and [Mother] and severing that bond would be damaging to [C]hildren. Such a decision by the [orphans' c]ourt therefore is an abuse of discretion and the termination of

- 8 -

[Mother's] parental rights based on 23 Pa.C.S. § 2511(b) should be overturned.

Mother's Brief at 21-22. This argument is also belied by the evidence.

Dr. Bernstein's testimony supports the orphans' court's finding that termination serves Children's needs and welfare. While Dr. Bernstein recognized a bond between Mother and Children, he explained that "ultimately, [Mother] appeared considerably deficient in providing [C]hildren with an adequate environment of proper supervision and stimulation that was necessary for [C]hildren." N.T. at 13. Dr. Bernstein stated that "whatever consequence may occur from the result of [a] severed bond [between Mother and Children] will be compensated for by the love and support and quality of care offered by [F]oster [P]arents, whom I endorsed as a prospective adoptive placement option." *Id.* at 41.

Ms. Miller also testified that termination was in Children's best interest. She opined that termination "would not have detrimental effects [on Children] because Mother cannot take care of [Children] and does not have the capacity to understand what [Children] need." OCO at 4 (citation to notes of testimony omitted).

Consistent with the evidence, the orphans' court concluded:

Whatever relationship [Children have] had with Mother, that relationship is compromised to some level for [Children] and [their] overall wellbeing. … Mother's lack [of] caregiving skills ha[s] resulted in a compromised bond, though one exists. Further, the [c]ourt agrees with the statements of Dr. Bernstein noting that whatever consequence which occurs from the severed bond between Mother and Child[ren] will be compensated for by

the love and support and quality of care offered by [Foster Parents, who are pre-]adoptive parents.

It is clear that permanency for [Children] is necessary and permanency with Mother is very unlikely to occur within any reasonable amount of time, as Mother appears to have little understanding why [Children were] removed in the first place.

*Id.* at 11 (citations to notes of testimony omitted).

As indicated above, the evidence supports the orphans' court's finding that termination served Children's needs and welfare under Section 2511(b). We discern no error or abuse of discretion in the termination of Mother's parental rights.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/11/2026

- 10 -